UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

_____

DEBBIE ROHN; and DEAN ROHN;

        Plaintiffs,

                                 File No. 14-

v                                  Hon.

VIACOM INTERNATIONAL, INC.;
ZAZZLE, INC.; CAFEPRESS, INC.;
ETSY, INC.; GILT GROUPE, INC.;
GOODIES FOR KIDDIES;
JOURNEYS FOR KIDZ;
KMART HOLDING CORP.;
KOHL'S CORPORATION; NEXTAG, INC.;
SEARS, ROEBUCK & CO.;
SHOPZILLA, INC.; and TARGET CORPORATION;

        Defendants.

_____

Thomas H. Blaske (P26760)
John F. Turck IV (P67670)
BLASKE & BLASKE, P.L.C.
Attorneys for Plaintiffs
500 South Main Street
Ann Arbor, Michigan 48104
(734) 747-7055
thb@blaske.com
jt4@blaske.com

# **COMPLAINT**

## **and**

# **DEMAND FOR JURY TRIAL**

Plaintiffs, by and through their attorneys, BLASKE & BLASKE, P.L.C., for their Complaint say:

## NATURE OF THE ACTION

1.  Plaintiffs Debbie and Dean Rohn, wife and husband, own two trademark registrations for the mark GUPPIE in connection with clothing (one word mark and one logo mark). Defendant Viacom obtained registration of a BUBBLE GUPPIES mark in connection with entertainment services, but not in connection with clothing. Viacom airs a children's program entitled BUBBLE GUPPIES on Nickelodeon. This action arises from Defendants' intentional violation of the Rohns' trademarks, particularly with respect to Defendants' marketing, offering for sale, and sale of clothing and other merchandise related to its Bubble Guppies show. Despite Defendants' knowledge of the Rohns' trademarks and the Rohns' express objections to Defendants' offering for sale and sale of clothing and related merchandise, Defendants intentionally moved forward anyway, damaging Plaintiffs by their brazen violations of the Rohn trademarks. Defendants' acts and omissions also violated the Lanham Act, 15 U.S.C. § 1114 *et seq.*, and the Michigan Consumer Protection Act, M.C.L. § 445.903.

## THE PARTIES

2.  Plaintiff Debbie Rohn, the wife of Dean Rohn, is a resident of the City of Cadillac, County of Wexford, State of Michigan.

3.  Plaintiff Dean Rohn, the husband of Debbie Rohn, is a resident of the City of Cadillac, County of Wexford, State of Michigan.

4.  Upon information and belief, Defendant Viacom International, Inc.(hereinafter sometimes "Viacom") is a foreign for-profit corporation that conducts business in, among other

places, Michigan, including this district. Upon information and belief, MTV, MTV Networks, Nickelodeon, Nickelodeon Jr. are subsidiaries of or are similarly affiliated with Defendant Viacom.

5.      Upon information and belief, Defendant Zazzle, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

6.      Upon information and belief, Defendant CafePress, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

7.      Upon information and belief, Defendant Etsy, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

8.      Upon information and belief, Defendant Gilt Groupe, Inc., d/b/a Gilt, is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

9.      Upon information and belief, Defendant Goodies for Kiddies is a foreign for-profit entity that conducts business in, among other places, Michigan, including this district.

10.     Upon information and belief, Defendant Journeys for Kidz is a foreign for-profit entity that conducts business in, among other places, Michigan, including this district.

11.     Upon information and belief, Defendant Kmart Holding Corp. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

12.     Upon information and belief, Defendant Kohl's Corporation is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

13.     Upon information and belief, Defendant Nextag, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

14.     Upon information and belief, Defendant Sears, Roebuck & Co. (hereinafter sometimes "Sears") is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district. Upon information and belief, Defendants Sears, Roebuck & Co. is a subsidiary of Defendant Kmart Holding Corp.

15.     Upon information and belief, Defendant Shopzilla, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

16.     Upon information and belief, Defendant Target Corporation is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

## JURISDICTION

17.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and(b) as, among others, Plaintiffs bring claims under the Lanham Act, 15 U.S.C. § 1114 *et seq*, and the Michigan Consumer Protection Act, M.C.L. § 445.903.

18.     The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendants because, on information and belief, each Defendant conducts business in this district.

## VENUE

20.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred here, and because the events or omissions giving rise to the claim significantly impacted business in this district.

21.     Venue also is proper under 28 U.S.C. §1391(b)(3) because, if no single district exists in which an action may otherwise be brought, Defendants, upon information and belief, conduct business in this district and are otherwise subject to the Court's personal jurisdiction with respect to this action.

## GENERAL ALLEGATIONS/STATEMENT OF THE CASE

### Sharks versus Guppies

22.     In January 2013 a package arrived at the home of Dean and Debbie Rohn in Cadillac, Michigan. They feared what was inside. They had ordered a single t-shirt online from Sears, because they wanted to see for themselves one of the many products that was infringing on their own hard-earned trademarks. Debbie opened the envelope and pulled out a fuschia pink t-shirt with two words across the front: "Hello Guppies!" The shirt also showed two smiling fish-children characters (human heads, clothing, and fish tails). An orange stamp inside the collar confirmed that this shirt was not one of their Guppies, but that it was, instead, spawned by the mega corporation, Viacom/Nickelodeon.



23. Finally holding this shirt in her hands was like a punch in the gut. "I remember thinking, 'That's my name. That's my right. I can't believe they're doing this!'" Her husband, Dean, had the same reaction: "We felt violated."

### Who are the Rohns?

24. Debbie and Dean Rohn have been in business together since 1990 as owners of a childrens' clothing line they called Guppie Kid.

25. Their interwoven personal history goes back even further. They were high school sweethearts in Alpena, Michigan, where Debbie's dad was a factory worker and Dean's dad was a baseball coach.

26. Two weeks before they married, Dean (a Ferris State graduate who studied drafting and engineering) found a job as a design engineer at a vacuum factory in Cadillac. After the young couple moved west across the mitten, Debbie found a position as support specialist for the county prosecutor's office, working mostly with child support collection cases.

27. When Debbie and Dean's first child, Brett, was born in 1986, Debbie decided to leave her job and focus on raising a family. It was tough to meet the daily demands of motherhood

with no grandparents living close by, and she was determined to do as good a job as possible for her kids. The household became busier when Kirsten was born in 1989. And just as these two children were getting into their busy sports-playing years, along came Brandon in 1998.

28. Given the history of baseball in the Rohn family – Dean's father and two brothers are in the Alpena Sports Hall of Fame and both brothers were signed to major league teams – it seems baseball was in the DNA of Debbie and Dean's children. While Debbie was determined not to push them toward the sport, Brett and Kirsten were both playing catch before they could talk. "They became obsessed with baseball," says Debbie. Brett, a shortstop, played all through high school and college. Kirsten played both softball and volleyball in high school and earned a scholarship to play softball at Lansing Community College where her team made it to the softball college world series.

29. As Debbie and Dean raised their children and pursued the family business of Guppie Kid, Dean's career as a small corporate executive blossomed. He was with the vacuum factory 17 years before becoming project manager for an iron-casting foundry. Five years later he moved to Piranha Hose as operations manager. This Cadillac-based company makes thermal plastic high-pressure hoses that are sold worldwide. In the nine years Dean has been on the job, Piranha sales have increased from $6 million to $23 million, and the company has grown from 35 to 95 employees.

30. Dean brought his business expertise to Guppie Kid all the while encouraging his wife's vision for the product, the brand, and the message.

### Yuppie Guppie

31.    The concept for Guppie Kid first took shape in late 1988 when Debbie's oldest son, Brett, was still a toddler. Debbie was preparing for a formal family portrait, and she had the idea that it would be fun for Brett to dress like his father dressed for work—in tie and suspenders. Debbie imagined Brett as a pint-sized "yuppie" (a word that had just entered the pop culture lexicon a few years earlier), and the name and spelling of "guppie" arrived in a flash.

32.    In the ensuing days, the image of children dressed in their own "Guppie" brand clothing wouldn't leave her alone. It had been only a decade since Izod's crocodile, Ralph Lauren's polo player, and Nike's swoosh had transformed how adult clothing was sold. Although kids' clothing had a few recognizable brands in the late 1980s (like Oshkosh b'Gosh), a logo-dominated marketing strategy for children's clothing had not yet emerged. Debbie wanted to stake a claim to the huge market potential of young yuppie parents buying an "in" logo for their kids.

33.    One evening, Debbie found herself sitting at the dining room table sketching a fish with a necktie – a yuppie guppie – and imagining what it would look like on a child's shirt. With the help of a professional graphic designer, the fish with a necktie became the "G" in the word "Guppie", and thus a logo was born.



*Debbie Rohn's original sketch of the Guppie Kid character/logo.*



*Debbie Rohn's original font considerations.*

34.     In 1990, with the help of a friend, the Rohns successfully registered a trademark of the

Guppie logo with the United States Patent and Trademark Office as a "design plus letters."

It was registered to be used with all the following goods which Debbie was researching

how to produce: baby bunting, bloomers, boxer briefs, boxer shorts, coats, dresses, hats,

jackets, leggings, mittens, pants, shirts, shoes, shorts, skirts, slippers, slips, socks, suits, sweatpants, sweatshirts, sweaters, ties, and underwear.

### Social Entrepreneur

35.  Looking back on the founding of her business more than 20 years ago, Debbie remembers feeling even in the beginning an irresistible tug toward a larger purpose. "Once he was named and drawn," she says of her Guppie logo, "he had to mean something." Although she was excited about being an entrepreneur, Debbie, who is an idealist, also wanted a business that made the world a better place. The concept of "social entrepreneur" was just gaining traction at this time, and Debbie hadn't heard that term. But she was determined to be one.

36.  "I wanted to make my own difference," says Debbie, "with a clothing line with a positive message. Guppie was a name, a character, and a positive message right from the get-go. The positive message was to promote kindness and hard work."

37.  When Guppie Kid was first established, Debbie was 30 years old with two children under age five. Every day was an opportunity to teach her children the values with which she was raised, the values she believed were important to living a good life and having a good future. She wanted her business to foster these values.



*Debbie Rohn with children Brett and Kirsten in Guppie clothing, 1990.*

Page 10 of 34

38.     Starting with her earliest t-shirts, Debbie's Guppie Kid clothing tags included the line "I'm a Guppie Kid." What did it mean to be a Guppie Kid? To answer that, Debbie developed an acronym – Growing Up Playing Pursuing Individual Excellence – and a pledge (officially copyrighted in 1995) that also appeared on the clothes' cardboard hanging tags:

> "We pledge to work very hard to do our best, because someday we would like to be a success. But most important to be a GUPPIE, we pledge to be kind, loving, and help others. That would make us truly happy."

  

*Guppie Kid clothing tags with the acronym and pledge*

39.     "People loved the idea of a business with a positive message for kids," says Debbie, "and I was so excited."

40.     Each purchase of Guppie clothing also came with "licenses" (similar to the idea of fishing licenses) for "Success" and "Happiness".





*Guppie Kid "licenses" and bookmark – free with every clothing purchase*

### Pre-Information Age Business Challenges

41.   In those days before the Internet and digital design, new business development was substantially more time-consuming and logistically more difficult. Debbie was on the telephone for hours researching clothing suppliers and sales outlets. It was difficult to find a garment manufacturer that would take small orders while Debbie built up the business. But she persisted and soon had a modest line of good-quality, all-cotton Guppie clothing for children, including shirts, dresses, pants, hats, jackets, and infant onesies. Fluorescent colors were all the rage at that time, so she also invested in a line of Guppie t-shirts in shades of neon lime, orange, and pink.

42.   Marketing was also more daunting and more expensive before the Internet. Debbie sent press releases about the new business to Michigan newspapers, and she tried valiantly to get the attention of mom-oriented media, like morning television talk shows. At one point, Debbie and Dean decided to buy an advertisement in a national parenting magazine, but the cost for repeated national advertising was beyond their budget.

43.   On May 13, 1990 the *Traverse City Record-Eagle* published a feature about Debbie and her Guppie clothing line on the front page of the Sunday Business section. The article

described Debbie's plan to market to Michigan stores initially while positioning the company to expand nationwide as quickly as possible. It told about how she was visiting children's boutiques with her samples and already had an order from a Houghton Lake store.



44. That newspaper article led to an invitation to appear on a local radio show that was broadcast throughout the Cadillac/Traverse City/Petoskey area. Debbie was also interviewed on the radio in Alpena. She found that people were taken with her story of a stay-at-home mom pursuing a business with a message.

45. Guppie Kid clothing sold well at the boutique in Houghton Lake. Debbie learned that parents were buying the neon t-shirts for their kids to wear over bathing suits at the beach, and that teachers in the area particularly liked the messages associated with the clothing.

46. Many parents told Debbie that their children wanted to sleep in their Guppie shirts because they were so comfortable.

47.    Before long, Guppie Kid clothing was sold at stores in Alpena, Grand Rapids and Traverse City.

48.    In addition to the store locations, Debbie sold clothing direct to customers in the Cadillac area. Wherever she went in her community, people knew her as "the Guppie girl." Debbie remembers, "People said, 'You're gonna be famous.'" They even asked for her autograph. They were hoping she would create stuffed animals and a board game featuring her Guppie character.

49.    "My dream was to make this huge." Debbie imagined clothing made from pre-printed Guppie fabric as well as beach towels, flip flops, and bathing suits emblazoned with the Guppie logo. She also dreamed of commissioning an original Guppie Kid song to advance her positive message in future advertisements.

50.    Says Dean, "We were going to make it a recognizable and positive logo everywhere."

51.    Of course, manufacturing a wide range of products requires a significant capital investment, and Debbie and Dean had agreed they would not borrow money to pursue their goal. Living on one professional salary while sending two children to Catholic school demanded a frugal approach to business development.

52.    In 1995, a friend of Debbie's who had access to more resources took an interest in Guppie Kid and offered to help. The Rohns signed a licensing agreement with her, and she went to some clothing shows, researched fabrics, organized a professional photo shoot, and encouraged Debbie's vision. "We shared the same values," says Debbie. "We understood each other and where we wanted the business to go."

53.     Getting the critical mass of sales continued to elude the new partners, however, and after a year or so, the demands of motherhood called on both women to focus on their family priorities.

## The Business of Family

54.     In the Rohn household, baseball and softball ruled the day. Dean began coaching Brett and Kirsten's teams as Debbie managed the complicated schedules of two busy kids and a busy husband. "As a mom," she says, "I knew I had to help my kids do their things, follow their passions. That's what I wanted to do for them." The kids switched to public schools after elementary school, but sports remained a significant investment of time and finances. Brandon's birth in 1998 had, of course, complicated life further, and Debbie was always certain about what was most important. After all, if she was going to raise three Guppie kids of her own – kids who pursued individual excellence and behaved kindly toward others – she knew they needed strong, present parenting.

55.     Even when Debbie was focused more on her children than her business, she always carried the expectation – and eager desire – to give Guppie Kid more attention when the time was right.

56.     She renewed and protected her trademark throughout the 1990s and 2000s, and she always had products available for sale. In the late-1990s, she created her own email address: guppiekid@hotmail.com.

57.     Looking back on Guppie Kid in the 1990s, Debbie now understands that the message of her business was ahead of the curve. While the prevalence and tragic consequences of

bullying had not yet permeated public consciousness, Guppie Kid always had an anti-bullying message: "…to be kind, loving, and help others."

58.    Says Debbie, "When I was raising our kids, I always told them, 'If you're at a table, and someone's sitting there and not included, I don't care how many friends you're talking to, you make sure and invite that person or go and sit with that person. You don't know what that person went through that morning. You don't where they come from. We expect more from you, because you are so loved. God expects more of you, because you are blessed."

### Cyber-Sales and Cyber-Bullying

59.    The arrival of the Internet gave Debbie and Guppie Kid renewed energy.

60.    In the early-2000s Debbie hired a web designer to create Guppie Kid's first website, and she bought the URL guppiekids.com. When the site went live, Guppie Kid began to receive online orders from other states – Arizona, Colorado, California – and Debbie could see the potential for direct sales via the Web.



*Guppie Kid t-shirts, sweatshirts, and hats for sale on guppiekids.com*





*Guppie Kid clothes for infants as advertised on guppiekids.com*

61.    Increased media attention to bullying gave Debbie renewed motivation. "When I saw what people were saying in the news about bullies and cyber-bullying, I thought, 'Kids are getting picked on like never before. My message is even more important.'" Debbie added the tag line "Kindness is Catchy" to her promotions to reinforce the message to be kind and helpful to others.

62.    She sought the advice of a SCORE counselor (free small business assistance) who helped her develop a new business plan and present her concept to three marketing firms for bids.

63. She also presented her positive-message clothing idea to the Cadillac Area Public Schools Superintendent and the public school counselor. They were supportive but had limited options for working with a for-profit business.

64. In the early-2000s family was still Debbie's primary focus. Brett had graduated from high school and left for college, but Kirsten was on a traveling softball team every summer and inviting her friends home every weekend. And Brandon was still younger than 10 years old. "This is the time you cherish with your kids," Debbie recognized. "That's what we did."

65. By 2008, however, things were looking a little different for the Rohn family. Kirsten had graduated from high school and gone to college, and Brandon's schedule (he was not as driven to play sports) allowed Debbie more time for her own pursuits. Just as she was ready to jump into Guppie Kid with both feet, just as another impediment emerged.

### Blowfish Brouhaha

66. Soon after guppiekids.com went live, a man called Debbie to profess interest in selling Guppie clothing in the Miami area. He impressed Debbie with his professionalism, and he requested samples to show buyers in Florida. Toward the end of the call, he asked if she had any shoes in her product line, and Debbie said, "Not yet."

67. When she hung up the phone, Debbie thought, "This is it. My dream's gonna come true." She hastily packaged up a box of Guppie clothing and shipped them to Miami.

68. A week later, her doorbell rang, and legal papers were served. Debbie and Dean were being sued under a claim of fraudulent trademark because their company did not sell shoes.

69. When the Rohns originally registered the Guppie mark in 1990, they were advised to list

all the goods they intended to produce, because protection of the mark on any goods not listed would require a new trademark application. Shoes and slippers had always been part of Debbie's vision, but her protracted business development process had not yet resulted in Guppie Kid shoes.

70.     Debbie and Dean soon learned that Blowfish Shoes, a large shoe wholesaler, wanted to create a new line of women's shoes under the name "Guppy Love" but were well aware of the Rohns' Guppie trademark for clothing and shoes.

71.     Blowfish had hired a private investigator to look into the Guppie Kid business. Debbie discovered this subterfuge when the box of clothing samples she had sent came back from Florida with a return address showing the name of the private investigator included in Blowfish's legal paperwork. Debbie had been duped into thinking a professional clothing distributor cared about her small business, when really she was being set up for a trademark fight.

72.     "Blowfish wanted everything," Debbie remembers. "They had hired a private investigator to help them squish me."

73.     But Debbie would not be squished.

74.     She and Dean decided they were willing to give up the plan to sell Guppie shoes, but they definitely would not give up their Guppie clothing line and all their dreams for the Guppie Kid business. Instead they fought to keep their Guppie trademark and the right to produce the clothing line they had been selling for almost twenty years.

75.     Eventually, Blowfish agreed to settle, taking the right to produce shoes and slippers and leaving the Rohns with the right to produce clothing as outlined in their original trademark

registration.

76.     That Blowfuish settlement was finalized in 2009, and the Rohns continue to own this trademark to this day.

77.     One happy result of the Blowfish lawsuit was confirmation in 2009 that the Rohns hold the trademark on the "standard character mark" of "Guppie" as well as on the "design with letters."

78.     Although they had not originally sought to trademark "Guppie" apart from the logo, they successfully petitioned the United States Patent and Trademark Office to grant them the word mark after they had been using it so long. This standard character mark "Guppie" was granted retroactively back to 1990, the year the design was trademarked.

79.     Both the word mark and the logo have been in continuous use in interstate commerce in connection with clothing since at least as early as the dates specified in the respective trademark applications.

80.     To this day, the character mark of "Guppie" is trademarked by the Rohns for use on these goods: hats, jackets, boxer briefs and/or boxer shorts, pants, shirts, shorts, t-shirts, ties, sweatshirts, hooded shirts, gloves, and infant's underwear.

**<u>Guppies Popping Up All Over</u>**

81.     As it turned out, their successful effort to hold fast to "Guppie" in the face of Blowfish's attack was only the beginning of the Rohns' journey to defend their trademark.

82.     The Internet may make business development research and marketing easier, but it also brings to light every potential infringement.

83. "I was still trying to do my thing," says Debbie, "when Guppie, Guppie, Guppie started popping up all over the Internet. Other people were using the word for their clothing businesses. Instead of me being able to promote and come up with clothes and ideas and invest in my dream – I would call it my fourth kid, Guppie – I was constantly on the other side, on defense, writing people and sending them letters, protecting my name."

84. She had to inform a Guppies Boutique in Washington and another in Tennessee that they were infringing on the trademark. Debbie is quick to point out that she was apologetic and kind with the fellow women business owners whom she contacted. "I said, 'I'm sorry, but this is the law. For me to keep my business name, I have to ask you to change yours.' I was never nasty." She tried to reach them before they had gotten too far into their new business promotion, but she was willing to take legal action when one business owner resisted. "I had learned a lot about protecting my baby," says Debbie. She had vowed never again to be blind sided as she had been by Blowfish.

### Bubble Guppies

85. Thus, when Debbie learned of a new children's television show aired by Viacom on Nickelodeon, called *Bubble Guppies*, she wanted to give the television network a heads-up while the show was still in development.

86. She was searching the Web in early 2009 when she came across plans describing the upcoming new show on Nickelodeon. "I saw these little kids with fishtails being called Bubble Guppies," says Debbie.

87. The show involves animated mer-children and sea creatures, and is directed toward preschoolers.

88.     Not only was the word Guppie in the show's title and the character name, but the image of a cross between a fish and a human, with a face and clothing and a fish tail, certainly had the potential to cause confusion for consumers looking for Guppie Kid clothing.

89.     Dean and Debbie immediately wrote a letter to MTV Networks (parent company of Nickelodeon), dated January 19, 2009, to make the company aware of the Rohns' two trademarks. While their letter did not object to the characters, the content, or even the name of the show, the Rohns wanted to be sure that MTV Networks understood that if it intended to produce related clothing, it would need to negotiate a trademark licensing agreement with the them. Their letter even was complimentary and encouraging of the new TV show and kindly offered to "work together." Their letter continues, "Like our Guppie message promotes: we need to treat others the way we would like to be treated."

90.     The response to their letter from MTV Networks legal counsel Amanda M. Leith, dated March 20, 2009, was brief, vague, incorrect, and dismissive: "It is our contention that if we choose to use 'Bubble Guppies' on clothing, it will not infringe any rights you may have."

91.     Debbie and Dean responded and again offered to discuss a licensing agreement. Debbie could hardly believe she was once again forced to dedicate time and money to protecting the Guppie trademark. "Because I have a name that's really catchy," she says, "and I am just who I am – a small business owner – it feels like I've had to go through a lot more than most businesses to fight for my name. And that's where all my energy has gone – fighting to keep this name and not being able to focus on the product."

92.    The first episode of *Bubble Guppies* aired on January 24, 2011. Around that same time Debbie and Dean learned that Nickelodeon was offering iron-on Bubble Guppie decals for clothing. The Rohns sent another letter to MTV/Viacom, once again offering to license their Guppie trademark. There was no response.

93.    On July 19, 2011 Viacom successfully trademarked "Bubble Guppies" as a standard character mark for use in "entertainment services in the nature of a television series featuring animation, comedy, and drama" and for "providing online information in the field of entertainment concerning television programs."

94.    The Viacom trademark did not apply to clothing.

95.    In January 2013 Debbie and Dean learned that various national mega-retailers (including Kmart, Kohl's, Sears, Target, and several online stores) were offering clothing designed with the words "Bubble Guppies" and even "Hello Guppies!"

96.    This is when the Rohns ordered that t-shirt from Sears to hold in their hands an example of the products that were infringing on their trademark.

97.    When Debbie opened the package containing the "Hello Guppies!" T-shirt, her emotions ranged from anger to despair, disbelief to disappointment. She had done everything she could to communicate openly, sensibly and fairly with Viacom, giving them plenty of time to negotiate a license or adjust their plans to avoid infringing on the Rohns' trademark.

98.    Instead, Viacom, MTV Networks and Nickelodeon swam forward like sharks, willing to eat anything in their path, even a hard-working social entrepreneur and stay-at-home mom with a small but well-loved business based on guppies.

99. After the television show was first aired, Viacom has licensed use of it BUBBLE GUPPIES mark to a variety of retailers, including Kohl's, J.C. Penney's, and others, and these retailers have begun to manufacture and sell clothing bearing the BUBBLE GUPPIES and GUPPIE marks.

100. Viacom intentionally caused the Defendants third-party licensees to infringe Plaintiffs' GUPPIE trademark when Viacom licensed those third parties to manufacture and sell clothing bearing a mark which creates a likelihood of confusion.

101. The act of licensing shows intent on behalf of Viacom for the third parties to infringe.

102. For purposes of these claims, there is no meaningful distinction between Viacom and the third party licensees.

103. Viacom used the mark in commerce by licensing it and marketing the licensed clothing.

104. The third party licensees did so by producing and selling clothing bearing the mark.

105. Each party's use was also connected with the sale, offering for sale, distribution, or advertising of goods as well.

106. The goods here are the infringing clothes and related merchandise.

107. Viacom advertised and likely sold the goods by marketing the clothing and licensing the right to make it.

108. The third parties sold and offered to sell the goods by actually selling the infringing clothing.

109. The Rohns learned of the existence of this clothing only in 2013, and subsequently discovered that no fewer than ten retailers are selling such clothing.

110.    The Rohns sent letters to these retailers advising of their ownership of the GUPPIE registration, and Viacom has responded with a cease and desist letter demanding that the Rohns stop contacting retailers regarding this issue, and claiming that such communications are tortious interference with contract.

111.    As noted, the Rohns own two registrations. The first is for the word mark GUPPIE,[1] in connection with hats, jackets, boxer briefs and/or boxer shorts, pants, shorts, t-shirts, ties, sweatshirts, hooded shirts, gloves, infant's underwear. It looks like this:

# GUPPIE

112.    The Rohns also own a trademark for the following logo,[2] in connection with baby bunting, bloomers, boxer briefs, boxer shorts, coats, dresses, hats, jackets, leggings, mittens, pants, shirts, shorts, skirts, slips, socks, suits, sweat pants, sweat shirts, sweaters, ties and underwear:



---

[1]    See registration number 3711588; serial number 77700678.

[2]    See registration number 3290738; serial number 78857582.

113.   Viacom has a trademark registration for BUBBLE GUPPIES in connection with "entertainment services in the nature of television series, featuring animation, comedy and drama, providing online information in the field of entertainment concerning television programs".[3]

114.   The marks are similar in sight and sound, and Viacom's addition of the word "Bubble" is not a sufficient distinction, particularly since the marks are all used in connection with the sale of clothing and the word "Guppies".

115.   Indeed, there is a greater likelihood of confusion because Viacom has adopted Plaintiffs' entire trademark – "Guppies" – as part of its mark.

116.   Use of the work "Guppie" and/or "Bubble Guppies" on clothing creates a close connection with Viacom's "Bubble Guppies" cartoon and other use of its trademark.

117.   Use of these words and images in close connection with clothing is not principally aesthetic or decorative in character, but is intended as a source-identifying function.

118.   The "Hello Guppies!" shirt especially rankled Debbie, because she had long been marketing her products by speaking directly to her child customers as "Guppies" – as in her Facebook posts "Dream big, Guppies!" and "Happy Summertime, Guppies!"

119.   The phrase "Hello Guppies!" was seen as speaking to little kids *as* Guppies. It only intensified Debbie's sense of feeling violated as it increased the likelihood of customer confusion. Indeed, the Bubble Guppies Facebook page explicitly calls children "Guppies" with phrases like these:

---

[3]      See registration number 3998384; serial number 77169928.

"Don't let your little Guppies miss the chance to give thanks to their favorite teachers!"

and

"These printable stickers will help your little guppy get excited about recycling"

120.   In February 2013 Debbie and Dean wrote to Bubble Guppie clothing retailers individually to alert them to the trademark infringement. This effort prompted the first communication from MTV/Viacom to the Rohns since 2009, now threatening the <u>Rohns</u> with a suit for tortious interference.

121.   Dean and Debbie sought new legal counsel to respond to this letter and to reiterate an expectation that MTV/Viacom enter into a licensing agreement with the Rohns in regard to Bubble Guppies clothing.

122.   Instead, MTV/Viacom ignored their offer of peace.

### **Guppie Kid Today**

123.   Over the past two years, Debbie has continued to balance the demands of motherhood, business marketing, and defending the Guppie trademarks.

124.   In spring 2012 she launched a new and improved website and a Guppie Kids Facebook page. She created a downloadable "Guppie Pledge Weekly Chart" for parents to use with their children to acknowledge good behavior like "Cleaned My Room" and "Played Nice." She also met her long-time goal of commissioning an official Guppie Kid Theme Song that can be listened to through the website. (CDs of the song are sent free with every purchase.)

125. Guppie Kids clothes are now produced with digital files using a local Cadillac manufacturer, and Debbie has made popular improvements to her line like glitter logos and

shirts for adults.

126. In summer 2012 she sold her clothing at a fair in downtown Cadillac, and two Michigan stores – one in Baldwin, one in Lake City – began carrying her products. Also that summer, students at Baker College chose Guppie Kids as the company they most wanted to analyze for a business and marketing class project because they liked the concept. Debbie has developed an unusual local promotion to highlight Guppie Kids' "Kindness is Catchy" message. She partnered with an independent pizza shop to invite people to register for a drawing at the pizzeria for a $25 gift certificate. The catch: along with a name, people had to submit a story about a good deed they had done recently. The box promoted Guppie Kids' Facebook page and website. "When I went to do the drawing," says Debbie, "there was a whole box of good deeds."

127. In summer 2013 she sold clothing at a women's fair in Manton, Michigan, and she continues to post regularly to the Guppie Kids Facebook page, but online sales have all but dried up. She added the words "The Original" to her website home page, but a Google

search for Guppie clothing is dominated by Bubble Guppie results.

128.  In 2013 Viacom/Nickelodeon release a Bubble Guppies DVD video, entitled "When We Grown Up."[4] The review to the video describes the synopsis as, "The six episode collection follows the guppies through a variety of field trips that help them learn concepts of teamwork, kindness and personal responsibility." –Tracie Cooper, Rovi".

129.  Bubble Guppies also has a major presence on Facebook, at https://www.facebook.com/BubbleGuppies.

130.  Recent posts to Bubble Guppies Facebook page including the following:

  a.  "Mix it up! Your little guppy can create a rainbow of colors with this printable painting pack: http://at.nick.com/FavoriteColors" (Post dated January 15, 2014.)

  b.  "What's your little guppy's favorite animal?" (Post dated January 8, 2014.)

  c.  "Goby loves to dive into a good story. What's your little guppy's favorite book?" (Post dated December 11, 2013.)

131.  All of these posts – and presumably others on the same site – confirm that Viacom/Nickelodeon not only infringe on the Rohns' trademarks with their use of Bubble Guppies, but also with use of the word "guppy" and its variants, i.e. "guppy's".

132.  It is disheartening for Debbie, and thus for her husband who always believed in his wife's vision and wanted her to succeed. Debbie hopes to reinvigorate Guppie Kids in 2014, but the enthusiasm she used to feel for all things Guppie has been significantly dampened by the infringement of Bubble Guppies. "I thought my name was unique and so cute and so

---

[4]  It is available online, including through Best Buy: http://www.bestbuy.com/site/bubble-guppies-when-we-grow-up-dvd/7360106. p?id=2629325&skuId=7360106 (site most recently accessed January 23, 2014).

catchy. Now the originality of everything is gone. Now my dream has changed, because Guppie is no longer a unique brand."

133.   Now much of Debbie's motivation comes from wanting to fight the "shark" – Defendants here, primarily Viacom/Nickelodeon, and prove that just because they are a big company and she is a small company, Defendants cannot be allowed to get away with this. As she says, "We *did* do the right thing from the start. We *did* put them on notice. And they didn't do the right thing."

134.   "I never looked for this fight," says Debbie. "I don't want to be the center of attention. I like to let others shine. I like to stay in the background. But I feel like this situation chose me, and I can't take the easy way out now."

## COUNT I : TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

135.   Plaintiffs reallege and incorporate by reference all of the above allegations.

136.   Plaintiffs are the owners of two GUPPIE trademark registrations.

137.   Defendants' use of its BUBBLE GUPPIES mark and its other products, including but not limited to clothing, is likely to cause confusion, or to cause mistake, or to deceive. The parties' trademarks are very similar, and at least some of their offerings are closely related.

138.   Defendants had actual or constructive knowledge of the Rohns' trademark rights in January 2009, before Defendants produced any BUBBLE GUPPIES- or GUPPIES-related clothing.

139.   The Rohns have not consented to Defendants' use of its BUBBLE GUPPIES products and other actions and offerings. To the contrary, they have expressly objected to such use.

140.    Defendants' unauthorized use of BUBBLE GUPPIES and other GUPPIES-related mark constitutes trademark infringement in violation of 15 U.S.C. § 1114.

141.    The willful and intentional nature of Defendants' trademark infringement makes this an exceptional case pursuant to 15 U.S.C. § 117(a).

142.    As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have suffered damages in an amount to be determined at trial.

143.    As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have also suffered, and will in the future suffer, irreparable injury to their business, reputation, and goodwill. Plaintiffs will suffer such irreparable injury unless and until Defendants' misconduct is enjoined by this Court.

144.    All Defendants, acting individually and/or collectively, have violated Plaintiffs' rights under 15 U.S.C. § 1114, causing damages to Plaintiffs including but not limited to as described herein.

## COUNT II: FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

145.    Plaintiffs reallege and incorporate by reference all of the above allegations.

146.    The Rohns are the owners of two U.S. trademark registrations for their GUPPIE word mark and logo mark.

147.    Plaintiffs' began using the GUPPIE mark prior to any of the Defendants' use of BUBBLE GUPPIES.

148.    Defendants' unauthorized use of BUBBLE GUPPIES suggests that Defendants and their

**Page 31 of 34**

offerings are connected with, sponsored by, affiliated with, or related to GUPPIE or GUPPIE KIDS, or that GUPPIE or GUPPIE KIDS and Plaintiffs' offerings are connected with, sponsored by, affiliated with, or related to Defendants.

149. Defendants' unauthorized use of Viacom's BUBBLE GUPPIES mark and its related offerings constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

150. The willful and intentional nature of Defendant Viacom's false designation of origin makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

151. As a direct and proximate result of this false designation of origin, Plaintiffs have suffered damages in an amount to be determined at trial.

152. As a direct and proximate result of Defendants' false designation of origin, Plaintiffs have also suffered, and will in the future suffer, irreparable injury to their business, reputation, and goodwill. Plaintiffs will suffer such irreparable injury unless and until Defendants' misconduct is enjoined by this Court.


## COUNT III: UNFAIR COMPETITION
### (M.C.L. 445.903)

153. Plaintiffs reallege and incorporate by reference all of the above allegations.

154. Defendants' conduct, including its unauthorized use of its BUBBLE GUPPIES mark and related merchandising, marketing, and other commercial efforts, causes a probability of confusion or misunderstanding as to the source, sponsorship, or approval of goods or services, in violation of the Michigan Consumer Protection Act, Michigan Compiled Laws section 445.903.

155.    Defendants' conduct is unlawful, unfair, and/or fraudulent.

156.    As a result of this unfair competition, Plaintiffs have suffered and will in the future suffer

damages in an amount to be determined at trial.

157.    As a direct and proximate result of this unfair competition, Plaintiffs have also suffered,

and will in the future suffer, irreparable injury to their business, reputation, and goodwill.

Plaintiffs will suffer such irreparable injury unless and until Defendants' misconduct is

enjoined by the Court.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief as follows:

A.      A judgment enjoining Defendants, and all of their agents, representatives, affiliates and

partners, preliminarily and permanently, from marketing, offering for sale, and selling any

and all clothing and related merchandise in violation of Plaintiffs' two GUPPIES

trademarks;

B.      A judgment ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court

and serve upon Plaintiffs within thirty (30) days after entry of the injunction, a report in

writing under oath setting forth in detail the manner and form in which Defendants have

complied with the injunction;

C.      A judgment that Defendants each account for and disgorge to Plaintiffs all of the profits

realized by Defendants, and others acting in concert or participating with Defendants,

resulting from Defendants' acts of trademark infringement, false designation of origin, and

unfair competition;

D.      A judgment awarding compensatory damages, plus interest, in an amount to be determined;

E.      A judgment that Plaintiffs be awarded three times Defendants' profits from their violation

of Plaintiffs' rights, or three times Plaintiffs' damages, whichever is greater, together with

Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. § 117(a) and (b);

F.      A judgment that Plaintiffs recover the costs of this action plus interest; and

G.      A judgment that Plaintiffs be granted such other and further relief as the Court deems just

and proper.


Dated: January 23, 2014                              ___ /s/ Thomas H. Blaske ___
                                                     Thomas H. Blaske (P26760)
                                                     John F. Turck IV (P67670)
                                                     BLASKE & BLASKE, P.L.C.
                                                     Attorneys for Plaintiffs
                                                     500 South Main Street
                                                     Ann Arbor, Michigan 48104
                                                     (734) 747-7055
                                                     thb@blaske.com
                                                     jt4@blaske.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 23, 2014                              ___ /s/ Thomas H. Blaske ___
                                                     Thomas H. Blaske (P26760)
                                                     John F. Turck IV (P67670)
                                                     BLASKE & BLASKE, P.L.C.
                                                     Attorneys for Plaintiffs
                                                     500 South Main Street
                                                     Ann Arbor, Michigan 48104
                                                     (734) 747-7055
                                                     thb@blaske.com
                                                     jt4@blaske.com