UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN
_____

DEBBIE ROHN; and DEAN ROHN;

               Plaintiffs,

                                 File No. 14-cv-83-JTN

v

                                 Hon. Janet T. Neff

VIACOM INTERNATIONAL, INC.;
ZAZZLE, INC.; CAFEPRESS, INC.;
ETSY, INC.; GILT GROUPE, INC.;
GOODIES FOR KIDDIES;
JOURNEYS FOR KIDZ;
KMART HOLDING CORP.;
KOHL'S CORPORATION; NEXTAG, INC.;
SEARS, ROEBUCK & CO.;
SHOPZILLA, INC.; and TARGET CORPORATION;

               Defendants.
_____

Thomas H. Blaske (P26760)
John F. Turck IV (P67670)
BLASKE & BLASKE, P.L.C.
Attorneys for Plaintiffs
500 South Main Street
Ann Arbor, Michigan 48104
(734) 747-7055
thb@blaske.com
jt4@blaske.com

# **FIRST AMENDED COMPLAINT**

Plaintiffs, by and through their attorneys, Blaske & Blaske, P.L.C, for their First Amended Complaint, say:

## NATURE OF THE ACTION

1. Plaintiffs Debbie and Dean Rohn, wife and husband, own two trademark registrations for the mark GUPPIE in connection with clothing (one word mark and one logo mark). Defendant Viacom obtained registration of a BUBBLE GUPPIES mark in connection with entertainment services, but not in connection with clothing. Viacom airs a children's program entitled BUBBLE GUPPIES on Nickelodeon. This action arises from Defendants' intentional violation of the Rohns' trademarks, particularly with respect to Defendants' marketing, offering for sale, and sale of clothing and other merchandise related to its Bubble Guppies show. Despite Defendants' knowledge of the Rohns' trademarks and the Rohns' express objections to Defendants' offering for sale and sale of clothing and related merchandise, Defendants intentionally moved forward anyway, damaging Plaintiffs by their brazen violations of the Rohn trademarks. Defendants' acts and omissions also violated the Lanham Act, 15 U.S.C. § 1114 *et seq.*, and the Michigan Consumer Protection Act, M.C.L. § 445.903.

## THE PARTIES

2. Plaintiff Debbie Rohn, the wife of Dean Rohn, is a resident of the City of Cadillac, County of Wexford, State of Michigan.

3. Plaintiff Dean Rohn, the husband of Debbie Rohn, is a resident of the City of Cadillac, County of Wexford, State of Michigan.

4.      Upon information and belief, Defendant Viacom International, Inc.(hereinafter sometimes "Viacom") is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district. Upon information and belief, MTV, MTV Networks, Nickelodeon, Nickelodeon Jr. are subsidiaries of or are similarly affiliated with Defendant Viacom.

5.      Upon information and belief, Defendant Zazzle, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

6.      Upon information and belief, Defendant CafePress, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

7.      Upon information and belief, Defendant Etsy, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

8.      Upon information and belief, Defendant Gilt Groupe, Inc., d/b/a Gilt, is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

9.      Upon information and belief, Defendant Goodies for Kiddies is a foreign for-profit entity that conducts business in, among other places, Michigan, including this district.

10.     Upon information and belief, Defendant Journeys for Kidz is a foreign for-profit entity that conducts business in, among other places, Michigan, including this district.

11.     Upon information and belief, Defendant Kmart Holding Corp. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

12.     Upon information and belief, Defendant Kohl's Corporation is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

13.     Upon information and belief, Defendant Nextag, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

14.     Upon information and belief, Defendant Sears, Roebuck & Co. (hereinafter sometimes "Sears") is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district. Upon information and belief, Defendants Sears, Roebuck & Co. is a subsidiary of Defendant Kmart Holding Corp.

15.     Upon information and belief, Defendant Shopzilla, Inc. is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

16.     Upon information and belief, Defendant Target Corporation is a foreign for-profit corporation that conducts business in, among other places, Michigan, including this district.

## JURISDICTION

17.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and(b) as, among others, Plaintiffs bring claims under the Lanham Act, 15 U.S.C. § 1114 *et seq*, and the Michigan Consumer Protection Act, M.C.L. § 445.903.

18.     The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendants because, on information and belief, each Defendant conducts business in this district.

**VENUE**

20.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred here, and because the events or omissions giving rise to the claim significantly impacted business in this district.

21.     Venue also is proper under 28 U.S.C. §1391(b)(3) because, if no single district exists in which an action may otherwise be brought, Defendants, upon information and belief, conduct business in this district and are otherwise subject to the Court's personal jurisdiction with respect to this action.

**GENERAL ALLEGATIONS/STATEMENT OF THE CASE**

**<u>Sharks versus Guppies</u>**

**<u>Who are the Rohns?</u>**

22.     Debbie and Dean Rohn have been in business together since 1990 as owners of a childrens' clothing line they called Guppie Kid.

23.     One evening, Debbie found herself sitting at the dining room table sketching a fish with a necktie – a yuppie guppie – and imagining what it would look like on a child's shirt. With the help of a professional graphic designer, the fish with a necktie became the "G" in the word "Guppie", and thus a logo was born.



*Debbie Rohn's original sketch of the Guppie Kid character/logo.*



*Debbie Rohn's original font considerations.*

24.     In 1990, with the help of a friend, the Rohns successfully registered a trademark of the

Guppie logo with the United States Patent and Trademark Office as a "design plus letters."

It was registered to be used with all the following goods which Debbie was researching

how to produce: baby bunting, bloomers, boxer briefs, boxer shorts, coats, dresses, hats,

jackets, leggings, mittens, pants, shirts, shoes, shorts, skirts, slippers, slips, socks, suits, sweatpants, sweatshirts, sweaters, ties, and underwear.

### Social Entrepreneur

25. When Guppie Kid was first established, Debbie was 30 years old with two children under age five. Every day was an opportunity to teach her children the values with which she was raised, the values she believed were important to living a good life and having a good future. She wanted her business to foster these values.



*Debbie Rohn with children Brett and Kirsten in Guppie clothing, 1990.*

26. Starting with her earliest t-shirts, Debbie's Guppie Kid clothing tags included the line "I'm a Guppie Kid." What did it mean to be a Guppie Kid? To answer that, Debbie developed an acronym – Growing Up Playing Pursuing Individual Excellence – and a pledge (officially copyrighted in 1995) that also appeared on the clothes' cardboard hanging tags:

> "We pledge to work very hard to do our best, because someday we would like to be a success. But most important to be a GUPPIE, we pledge to be kind, loving, and help others. That would make us truly happy."






*Guppie Kid clothing tags with the acronym and pledge*

27. Each purchase of Guppie clothing also came with "licenses" (similar to the idea of fishing licenses) for "Success" and "Happiness".





*Guppie Kid "licenses" and bookmark – free with every clothing purchase*

### Pre-Information Age Business Challenges

28.     In 1995, a friend of Debbie's who had access to more resources took an interest in Guppie

Kid and offered to help. The Rohns signed a licensing agreement with her, and she went

to some clothing shows, researched fabrics, organized a professional photo shoot, and

encouraged Debbie's vision. "We shared the same values," says Debbie. "We understood

each other and where we wanted the business to go."

### The Business of Family

29.     She renewed and protected her trademark throughout the 1990s and 2000s, and she always

had products available for sale. In the late-1990s, she created her own email address:

guppiekid@hotmail.com.

### Cyber-Sales and Cyber-Bullying

30.     In the early-2000s Debbie hired a web designer to create Guppie Kid's first website, and

she bought the URL guppiekids.com. When the site went live, Guppie Kid began to receive

online orders from other states – Arizona, Colorado, California – and Debbie could see the

potential for direct sales via the Web.



*Guppie Kid t-shirts, sweatshirts, and hats for
sale on guppiekids.com*





*Guppie Kid clothes for infants as advertised on guppiekids.com*

31.     She sought the advice of a SCORE counselor (free small business assistance) who helped her develop a new business plan and present her concept to three marketing firms for bids.

### **Blowfish Brouhaha**

32.     Debbie and Dean soon learned that Blowfish Shoes, a large shoe wholesaler, wanted to create a new line of women's shoes under the name "Guppy Love" but were well aware of the Rohns' Guppie trademark for clothing and shoes.

33. She and Dean decided they were willing to give up the plan to sell Guppie shoes, but they definitely would not give up their Guppie clothing line and all their dreams for the Guppie Kid business. Instead they fought to keep their Guppie trademark and the right to produce the clothing line they had been selling for almost twenty years.

34. Eventually, Blowfish agreed to settle, taking the right to produce shoes and slippers and leaving the Rohns with the right to produce clothing as outlined in their original trademark registration.

35. That Blowfuish settlement was finalized in 2009, and the Rohns continue to own this trademark to this day.

36. One happy result of the Blowfish lawsuit was confirmation in 2009 that the Rohns hold the trademark on the "standard character mark" of "Guppie" as well as on the "design with letters."

37. Although they had not originally sought to trademark "Guppie" apart from the logo, they successfully petitioned the United States Patent and Trademark Office to grant them the word mark after they had been using it so long. This standard character mark "Guppie" was granted retroactively back to 1990, the year the design was trademarked.

38. Both the word mark and the logo have been in continuous use in interstate commerce in connection with clothing since at least as early as the dates specified in the respective trademark applications.

39. To this day, the character mark of "Guppie" is trademarked by the Rohns for use on these goods: hats, jackets, boxer briefs and/or boxer shorts, pants, shirts, shorts, t-shirts, ties, sweatshirts, hooded shirts, gloves, and infant's underwear.

### Guppies Popping Up All Over

40. As it turned out, their successful effort to hold fast to "Guppie" in the face of Blowfish's attack was only the beginning of the Rohns' journey to defend their trademark.

### Bubble Guppies

41. Thus, when Debbie learned of a new children's television show aired by Viacom on Nickelodeon, called *Bubble Guppies*, she wanted to give the television network a heads-up while the show was still in development.

42. The show involves animated mer-children and sea creatures, and is directed toward preschoolers.

43. Not only was the word Guppie in the show's title and the character name, but the image of a cross between a fish and a human, with a face and clothing and a fish tail, certainly had the potential to cause confusion for consumers looking for Guppie Kid clothing.

44. Dean and Debbie immediately wrote a letter to MTV Networks (parent company of Nickelodeon), dated January 19, 2009, to make the company aware of the Rohns' two trademarks. While their letter did not object to the characters, the content, or even the name of the show, the Rohns wanted to be sure that MTV Networks understood that if it intended to produce related clothing, it would need to negotiate a trademark licensing agreement with the them. Their letter even was complimentary and encouraging of the new TV show and kindly offered to "work together." Their letter continues, "Like our Guppie message promotes: we need to treat others the way we would like to be treated."

45. The response to their letter from MTV Networks legal counsel Amanda M. Leith, dated March 20, 2009, was brief, vague, incorrect, and dismissive: "It is our contention that if

we choose to use 'Bubble Guppies' on clothing, it will not infringe any rights you may have."

46.    Debbie and Dean responded and again offered to discuss a licensing agreement. Debbie could hardly believe she was once again forced to dedicate time and money to protecting the Guppie trademark. "Because I have a name that's really catchy," she says, "and I am just who I am – a small business owner – it feels like I've had to go through a lot more than most businesses to fight for my name. And that's where all my energy has gone – fighting to keep this name and not being able to focus on the product."

47.    The first episode of *Bubble Guppies* aired on January 24, 2011. Around that same time Debbie and Dean learned that Nickelodeon was offering iron-on Bubble Guppie decals for clothing. The Rohns sent another letter to MTV/Viacom, once again offering to license their Guppie trademark. There was no response.

48.    On July 19, 2011 Viacom successfully trademarked "Bubble Guppies" as a standard character mark for use in "entertainment services in the nature of a television series featuring animation, comedy, and drama" and for "providing online information in the field of entertainment concerning television programs."

49.    The Viacom trademark did not apply to clothing.

50.    In January 2013 Debbie and Dean learned that various national mega-retailers (including Kmart, Kohl's, Sears, Target, and several online stores) were offering clothing designed with the words "Bubble Guppies" and even "Hello Guppies!"

51.    After the television show was first aired, Viacom has licensed use of it BUBBLE GUPPIES mark to a variety of retailers, including Kohl's, J.C. Penney's, and others, and

these retailers have begun to manufacture and sell clothing bearing the BUBBLE GUPPIES and GUPPIE marks.

52. Viacom intentionally caused the Defendants third-party licensees to infringe Plaintiffs' GUPPIE trademark when Viacom licensed those third parties to manufacture and sell clothing bearing a mark which creates a likelihood of confusion.

53. The act of licensing shows intent on behalf of Viacom for the third parties to infringe.

54. For purposes of these claims, there is no meaningful distinction between Viacom and the third party licensees.

55. Viacom used the mark in commerce by licensing it and marketing the licensed clothing.

56. The third party licensees did so by producing and selling clothing bearing the mark.

57. Each party's use was also connected with the sale, offering for sale, distribution, or advertising of goods as well.

58. The goods here are the infringing clothes and related merchandise.

59. Viacom advertised and likely sold the goods by marketing the clothing and licensing the right to make it.

60. The third parties sold and offered to sell the goods by actually selling the infringing clothing.

61. The Rohns learned of the existence of this clothing only in 2013, and subsequently discovered that no fewer than ten retailers are selling such clothing.

62. The Rohns sent letters to these retailers advising of their ownership of the GUPPIE registration, and Viacom has responded with a cease and desist letter demanding that the

Rohns stop contacting retailers regarding this issue, and claiming that such communications are tortious interference with contract.

63.    As noted, the Rohns own two registrations. The first is for the word mark GUPPIE,[1] in connection with hats, jackets, boxer briefs and/or boxer shorts, pants, shorts, t-shirts, ties, sweatshirts, hooded shirts, gloves, infant's underwear. It looks like this:

# GUPPIE

64.    The Rohns also own a trademark for the following logo,[2] in connection with baby bunting, bloomers, boxer briefs, boxer shorts, coats, dresses, hats, jackets, leggings, mittens, pants, shirts, shorts, skirts, slips, socks, suits, sweat pants, sweat shirts, sweaters, ties and underwear:



65.    Viacom has a trademark registration for BUBBLE GUPPIES in connection with "entertainment services in the nature of television series, featuring animation, comedy and drama, providing online information in the field of entertainment concerning television programs".[3]

---

[1]      See registration number 3711588; serial number 77700678.

[2]      See registration number 3290738; serial number 78857582.

[3]      See registration number 3998384; serial number 77169928.

66.   The marks are similar in sight and sound, and Viacom's addition of the word "Bubble" is not a sufficient distinction, particularly since the marks are all used in connection with the sale of clothing and the word "Guppies".

67.   Indeed, there is a greater likelihood of confusion because Viacom has adopted Plaintiffs' entire trademark – "Guppies" – as part of its mark.

68.   Use of the work "Guppie" and/or "Bubble Guppies" on clothing creates a close connection with Viacom's "Bubble Guppies" cartoon and other use of its trademark.

69.   Use of these words and images in close connection with clothing is not principally aesthetic or decorative in character, but is intended as a source-identifying function.

70.   In February 2013 Debbie and Dean wrote to Bubble Guppie clothing retailers individually to alert them to the trademark infringement. This effort prompted the first communication from MTV/Viacom to the Rohns since 2009, now threatening the Rohns with a suit for tortious interference.

71.   Dean and Debbie sought new legal counsel to respond to this letter and to reiterate an expectation that MTV/Viacom enter into a licensing agreement with the Rohns in regard to Bubble Guppies clothing.

72.   Instead, MTV/Viacom ignored their offer of peace.

**Guppie Kid Today**

73.   In 2013 Viacom/Nickelodeon release a Bubble Guppies DVD video, entitled "When We Grown Up."[4] The review to the video describes the synopsis as, "The six episode collection

---

[4]     It is available online, including through Best Buy: http://www.bestbuy.com/site/bubble-guppies-when-we-grow-up-dvd/7360106. p?id=2629325&skuId=7360106 (site most recently accessed January 23, 2014).

follows the guppies through a variety of field trips that help them learn concepts of teamwork, kindness and personal responsibility." –Tracie Cooper, Rovi".

74. Bubble Guppies also has a major presence on Facebook, at https://www.facebook.com/BubbleGuppies.

75. Recent posts to Bubble Guppies Facebook page including the following:

    a.    "Mix it up! Your little guppy can create a rainbow of colors with this printable painting pack: http://at.nick.com/FavoriteColors" (Post dated January 15, 2014.)

    b.    "What's your little guppy's favorite animal?" (Post dated January 8, 2014.)

    c.    "Goby loves to dive into a good story. What's your little guppy's favorite book?" (Post dated December 11, 2013.)

76. All of these posts – and presumably others on the same site – confirm that Viacom/Nickelodeon not only infringe on the Rohns' trademarks with their use of Bubble Guppies, but also with use of the word "guppy" and its variants, i.e. "guppy's".

## COUNT I : TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

77. Plaintiffs reallege and incorporate by reference all of the above allegations.

78. Plaintiffs are the owners of two GUPPIE trademark registrations.

79. Defendants' use of its BUBBLE GUPPIES mark and its other products, including but not limited to clothing, is likely to cause confusion, or to cause mistake, or to deceive. The parties' trademarks are very similar, and at least some of their offerings are closely related.

80. Defendants had actual or constructive knowledge of the Rohns' trademark rights in January 2009, before Defendants produced any BUBBLE GUPPIES- or GUPPIES-related clothing.

81.    The Rohns have not consented to Defendants' use of its BUBBLE GUPPIES products and other actions and offerings. To the contrary, they have expressly objected to such use.

82.    Defendants' unauthorized use of BUBBLE GUPPIES and other GUPPIES-related mark constitutes trademark infringement in violation of 15 U.S.C. § 1114.

83.    The willful and intentional nature of Defendants' trademark infringement makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

84.    As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have suffered damages in an amount to be determined at trial.

85.    As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have also suffered, and will in the future suffer, irreparable injury to their business, reputation, and goodwill. Plaintiffs will suffer such irreparable injury unless and until Defendants' misconduct is enjoined by this Court.

86.    All Defendants, acting individually and/or collectively, have violated Plaintiffs' rights under 15 U.S.C. § 1114, causing damages to Plaintiffs including but not limited to as described herein.

## COUNT II: FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

87.    Plaintiffs reallege and incorporate by reference all of the above allegations.

88.    The Rohns are the owners of two U.S. trademark registrations for their GUPPIE word mark and logo mark.

89.    Plaintiffs' began using the GUPPIE mark prior to any of the Defendants' use of BUBBLE GUPPIES.

90. Defendants' unauthorized use of BUBBLE GUPPIES suggests that Defendants and their offerings are connected with, sponsored by, affiliated with, or related to GUPPIE or GUPPIE KIDS, or that GUPPIE or GUPPIE KIDS and Plaintiffs' offerings are connected with, sponsored by, affiliated with, or related to Defendants.

91. Defendants' unauthorized use of Viacom's BUBBLE GUPPIES mark and its related offerings constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

92. The willful and intentional nature of Defendant Viacom's false designation of origin makes this an exceptional case pursuant to 15 U.S.C. § 1117(a).

93. As a direct and proximate result of this false designation of origin, Plaintiffs have suffered damages in an amount to be determined at trial.

94. As a direct and proximate result of Defendants' false designation of origin, Plaintiffs have also suffered, and will in the future suffer, irreparable injury to their business, reputation, and goodwill. Plaintiffs will suffer such irreparable injury unless and until Defendants' misconduct is enjoined by this Court.

## COUNT III: UNFAIR COMPETITION
### (M.C.L. 445.903)

95. Plaintiffs reallege and incorporate by reference all of the above allegations.

96. Defendants' conduct, including its unauthorized use of its BUBBLE GUPPIES mark and related merchandising, marketing, and other commercial efforts, causes a probability of confusion or misunderstanding as to the source, sponsorship, or approval of goods or services, in violation of the Michigan Consumer Protection Act, Michigan Compiled Laws

section 445.903.

97.   Defendants' conduct is unlawful, unfair, and/or fraudulent.

98.   As a result of this unfair competition, Plaintiffs have suffered and will in the future suffer

damages in an amount to be determined at trial.

99.   As a direct and proximate result of this unfair competition, Plaintiffs have also suffered,

and will in the future suffer, irreparable injury to their business, reputation, and goodwill.

Plaintiffs will suffer such irreparable injury unless and until Defendants' misconduct is

enjoined by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief as follows:

A.   A judgment enjoining Defendants, and all of their agents, representatives, affiliates and

partners, preliminarily and permanently, from marketing, offering for sale, and selling any

and all clothing and related merchandise in violation of Plaintiffs' two GUPPIES

trademarks;

B.   A judgment ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court

and serve upon Plaintiffs within thirty (30) days after entry of the injunction, a report in

writing under oath setting forth in detail the manner and form in which Defendants have

complied with the injunction;

C.   A judgment that Defendants each account for and disgorge to Plaintiffs all of the profits

realized by Defendants, and others acting in concert or participating with Defendants,

resulting from Defendants' acts of trademark infringement, false designation of origin, and

unfair competition;

D.    A judgment awarding compensatory damages, plus interest, in an amount to be determined;

E.    A judgment that Plaintiffs be awarded three times Defendants' profits from their violation of Plaintiffs' rights, or three times Plaintiffs' damages, whichever is greater, together with Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b);

F.    A judgment that Plaintiffs recover the costs of this action plus interest; and

G.    A judgment that Plaintiffs be granted such other and further relief as the Court deems just and proper.

Dated: July 1, 2014

           ___ /s/ Thomas H. Blaske ___
           Thomas H. Blaske (P26760)
           John F. Turck IV (P67670)
           BLASKE & BLASKE, P.L.C.
           Attorneys for Plaintiffs
           500 South Main Street
           Ann Arbor, Michigan 48104
           (734) 747-7055
           thb@blaske.com
           jt4@blaske.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 1, 2014

           ___ /s/ Thomas H. Blaske ___
           Thomas H. Blaske (P26760)
           John F. Turck IV (P67670)
           BLASKE & BLASKE, P.L.C.
           Attorneys for Plaintiffs
           500 South Main Street
           Ann Arbor, Michigan 48104
           (734) 747-7055
           thb@blaske.com
           jt4@blaske.com